**DEBRA A. DiIORIO**
DiIorio & Hall, APC.
California Bar No. 138018
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1451
Facsimile: (619) 544-1473

Attorneys for Defendant **Cunningham**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## (HON. BARRY T. MOSKOWITZ)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 08-CR-0286-BTM |
| Plaintiff, ) | Date: March 7, 2008 |
| ) | Time: 1:30 p.m. |
| v. **)** | |
| ) | **STATEMENT OF FACTS AND** |
| **MARTIN CUNNINGHAM,** ) | **MEMORANDUM OF POINTS AND** |
| ) | **AUTHORITIES IN SUPPORT OF** |
| Defendant, ) | **DEFENDANT'S MOTIONS** |
| ) | |
| ) | |

### I.

### STATEMENT OF FACTS

The following statement of facts is based, in part, on materials received from the government in discovery prior to indictment (69 pages of discovery). The facts alleged in these motions, therefore, are subject to amplification and/or modification at a future motion hearing; Mr. Cunningham reserves the right to take a contrary position at any future hearing as these facts are in no way intended by him as admissions.

On January 5, 2008, special agents from ATF, acting undercover, were surveilling a gun show in Yuma, Arizona. They focused on two young men who were wearing San Diego Chargers football jerseys, presumably because their attire indicated that they were from California. Agent Beals saw co-defendant Omar Jinesta purchasing multiple handguns from one vendor (known as a Federal Firearm Licensee, or "FFL"). After purchasing the handguns, Mr. Jinesta handed them to Martin Cunningham to carry. The two men eventually left the gun show and Mr. Cunningham put the guns in the trunk of a Honda Civic, bearing California License

1  Plates.

2  Agent Beals stopped the Honda at the California Department of Agriculture checkpoint,
3  which is located in Winterhaven, California. Mr. Jinesta identified himself as Ruben Gonzalez
4  and admitted purchasing five handguns at the Yuma gun show. He allegedly gave permission
5  to Agent Beals to search the car and the following firearms were discovered: three Walther,
6  model P22, .22 caliber pistols, one Glock, model 17, 9mm pistol, and one AMT, model Backup,
7  .380 caliber pistol. Agent Beals determined that the Glock and Walther firearms were not
8  manufactured in California. The AMT was manufactured in California. The agent further
9  determined that all five firearms traveled in and affected interstate commerce.

10  Agent Beals queried the National Crime Information Center (NCIC) and discovered
11  Martin Cunningham had a 2003 felony conviction for possession of marijuana for sale; Martin
12  Cunningham admitted to Agent Beals that he had indeed been convicted of that offense in state
13  court in California. Martin Cunningham was taken into custody, interrogated, and transported
14  to MCC in San Diego, California.

15  Mr. Jinesta provided a false name of Ruben Gonzalez to Agent Beals. He was also
16  interrogated, but apparently entered into a cooperation agreement with the agents and was
17  released.

18  On January 7, 2008, ATF agents were surveilling Mr. Jinesta's residence in Bonita,
19  California, where Martin Cunningham also lived. Although agents did not know of the
20  relationship at the time, Martin Cunningham's wife, Yadira, is the sister of Mr. Jinesta, and the
21  two families lived together. At 10:30 a.m., agents saw Mr. Jinesta leave the house in a car
22  driven by a man later identified as Robert Mendoza. The agents had apparently discovered Mr.
23  Jinesta's true identity and were aware that he had felony convictions. They attempted to stop
24  the car, but Mr. Mendoza refused to pull over and fled southbound on Interstate 5 into Mexico.
25  Mexican Customs officers stopped the car and turned over both Mr. Mendoza and Mr. Jinesta
26  to ATF agents.

27  Meanwhile, other agents at the Bonita residence observed a man, later identified as
28

Benjamin Cunningham, walk out of the house carrying a large plastic bag. The man threw the bag over a fence and then returned to the house. Shortly thereafter, he came out the front door, and walked toward the area where the bag had been tossed. Agents followed and detained Ben Cunningham. The plastic bag was found in the nearby bushes, and it contained small amounts of marijuana, cocaine, ammunition, a 9 mm handgun and various other items. The agents obtained consent to enter and search the house from other family members who were inside. While interrogating the residents, they learned that Mr. Jinesta had telephoned his wife, Jennifer Jinesta, while being pursued into Mexico by ATF agents. He told her about the pursuit and also told her to get rid of the items later found in the plastic bag. Jennifer admitted giving the items to Ben to take out of the house and they were both arrested. All of the participants in the events which took place on January 7, 2008 made detailed post-arrest statements which primarily inculpate Mr. Jinesta. Apparently all of the post-arrest statements were recorded.

Initially, Jennifer Jinesta and Benjamin Cunningham were charged in a separate complaint with aiding and abetting a felon in possession of a firearm and destruction and removal of property to prevent seizure; the cases were then joined and a single indictment was filed.

## II.

## MOTION TO COMPEL DISCOVERY

Mr. Cunningham requests the following discovery pursuant to Fed. R. Crim. P. 12(b)(4) and 16:

(1) all written and oral statements made by him. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Cunningham is contained. It also includes the substance of any oral statements, regardless of whether the government intends to introduce such statements at trial. These are all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). Mr. Cunningham also requests any response to any Miranda warnings which may have been given to him. See United States v. McElroy, 697 F.2d 459 (2d Cir. 1982);

3

1     (2) all documents, statements, agents' reports, and tangible evidence favorable to Mr. Cunningham on the issue of **guilt or punishment** and/or which affects the credibility of the government's case. This evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), and United States v. Agurs, 427 U.S. 97 (1976);

    (3) all evidence, documents, records of judgments and convictions, photographs and tangible evidence, and information pertaining to any prior arrests and convictions or prior bad acts. Evidence of prior record is available under Fed. R. Crim. P. 16(a)(1)(B). Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. Mr. Cunningham specifically requests reasonable notice pursuant to Fed. R. Evid 404(b) of at least four weeks prior to trial, of any evidence the government intends to introduce at trial under this rule;

    (4) all evidence seized as a result of any search, either warrantless or with a warrant, in this case. Mr. Cunningham specifically requests copies of all documents and evidence seized from him, and requests copies of all documents, evidence and physical items seized from any vehicle, as well as photographs, fingerprints, videotapes or recordings made in this case. This is available under Fed. R. Crim. P. 16(a)(1)(C);

    (5) all arrest reports, investigator's notes, memos from arresting officers, sworn statements and prosecution reports pertaining to Mr. Cunningham. These are available under Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(I);

    (6) the personnel file of the interviewing agent(s) containing any complaints of assaults, abuse of discretion and authority and/or false arrest. Pitchess v. Superior Court, 11 Cal. 3d. 531, 539 (1974). In addition, the defense requests that the government examine the personnel files of all testifying agents, and turn over Brady and Giglio material reasonably in advance of trial Kyles v. Whitley, 115 S.Ct. 1555 (1955); United States v. Henthorn, 931 F.2d 29, 30-31(9th Cir. 1991). If the prosecutor is unsure as to whether the files contain Brady or Giglio material, the files should be submitted to the Court, in camera. Id. The prosecution should bear in mind that there exists an affirmative duty on the part of the government to examine the files. Id.

4

(7) any and all statements made by any other co-conspirators, charged or uncharged. The defense is entitled to this evidence because it is material to preparation for the defendant's case and potentially Brady material. Also, insofar as such statements may be introduced as co-conspirator statements, they are discoverable. Fed. R. Crim. 16(a)(1)(C) and Brady. This evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976);

(8) Mr. Cunningham requests copies of any and all audio/video tape recordings made by the agents in this case and any and all transcripts, including taped recordings of any conversations of any of the agents involved in this case. This evidence is available under Fed. R. Crim. P. 16(a)(1)(C);

(9) Mr. Cunningham requests the name and last known address of each prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).

(10) all other documents and tangible objects, including photographs, books, papers, documents, photographs, or building or places or copies of portions thereof which are material to Mr. Cunningham's defense or intended for use in the government's case-in-chief or were obtained from or belong to Mr. Cunningham. Rule 16(a)(1)(C);

(11) all results or reports of scientific tests or experiments, or copies of which are within the possession, control, or custody of the government or which are known or become known to the attorney for the government, that are material to the preparation of the defense, including the opinions, analysis and conclusions of experts consulted by law enforcement including finger print specialists in the instant case. These must be disclosed, once a request is made, even though obtained by the government later, pursuant to Fed.R.Crim.Pro. 16(a)(1)(D).

(12) any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, agreement to execute a voluntary return rather than deportation or any

5

1  other kind of agreement or understanding between <u>any</u> prospective government witness and the
2  government (federal, state and local), including any implicit understanding relating to criminal
3  or civil income tax liability. <u>United States v. Shaffer</u>, 789 F.2d 682 (9th Cir. 1986); <u>United</u>
4  <u>States v. Risken</u>, 788 F. 2d 1361 (8th Cir. 1986); <u>United States v. Luc Levasseur</u>, 826 F.2d 158
5  (1st Cir. 1987);

6  (13) any discussion with a potential witness about or <u>advice</u> concerning any contemplated
7  prosecution, or any possible plea bargain, even if no bargain was made, or the advice not
8  followed. <u>Brown v. Duggen</u>, 831 F.2d 1546, 1558 (11th Cir. 1986) (evidence that witness
9  sought plea bargain is to be disclosed, even if no deal struck); <u>Haber v. Wainwright</u>, 756 F.2d
10 1520, 1524 (11th Cir. 1985);

11 (14) any evidence that any prospective government witness has engaged in any criminal
12 act whether or not resulting in a conviction. <u>See</u> Rule 608(b), Federal Rules of Evidence and
13 <u>Brady</u>;

14 (15) any evidence that any prospective witness is under investigation by federal, state or
15 local authorities for any criminal conduct. <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir.), <u>cert.</u>
16 <u>denied</u>, 474 U.S. 945 (1985); and,

17 (16) any evidence, including any medical or psychiatric report or evaluation, tending to
18 show that any prospective witness's ability to perceive, remember, communicate, or tell the truth
19 is impaired; and any evidence that a witness has ever used narcotics or other controlled
20 substance, or has ever been an alcoholic. <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. July
21 11, 1988); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 224 (4th Cir. 1980);

22 (17) the name and last known address of every witness to the crime or crimes charged (or
23 any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a government
24 witness. <u>United States v. Cadet</u>, 727 F.2d 1469 (9th Cir. 1984);

25 (18) the name and last known address of each prospective government witness. <u>See</u>
26 <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United States v. Tucker</u>, 716 F.2d 583
27 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); <u>United</u>
28

6

States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses);

(19) the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968); Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir. 1980); James v. Jago, 575 F.2d 1164, 1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1975);

(20) Mr. Cunningham requests a transcript of the grand jury testimony and rough notes of all witnesses expected to testify at the motion hearing or at trial. This evidence is discoverable under Fed. R. Crim. P. 12(I) and 26 and will be requested.

(21) Jencks Act Material. The defense requests all material to which defendant is entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial, including dispatch tapes. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under §3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991), the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act. The defense requests pre-trial production of Jencks material to expedite cross-examination and to avoid lengthy recesses during the pre-trial motions hearings or trial.

### III.

### MARTIN CUNNINGHAM REQUESTS THAT THE COURT GRANT LEAVE TO FILE FURTHER MOTIONS

Mr. Cunningham requests this Court to grant him leave to file further motions after complete discovery has been provided.

//
//
//
//

# IV.

# **CONCLUSION**

For the foregoing reasons, Mr. Cunningham requests that this Court grant the motions stated herein.

Respectfully submitted,

Dated: February 22, 2008

/s/ Debra A. DiIorio
**DEBRA A. DiIORIO**
DiIORIO & HALL, APC
Attorney for Defendant **Cunningham**